# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6946 | **DATE** | 8/20/2003 |
| **CASE TITLE** | Wilson vs. Sundstrand Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)■ [Other docket entry] Plaintiffs' motion to reconsider (253) is denied. Defendant's motion to compel depositions of Mary Trindle and Parlin Nainggolan is granted. Defendant's motion to clarify the record with respect to proper corporate name (242) is granted in part; the caption of the case is ordered amended to identify the defendant as "Sundstrand Corp, now k own as Hamilton Sundstrand Corp." Defendant's motion to bar Indonesian plaintiff heirs from testifying at trial (203) is granted. Defendant's motion to strike supplemental report of Haskins and bar testimony (267) is denied. Defendant's emergency motion to strike was resolved by agreement and is therefore terminated (252).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 25 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | *HP* | 33 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| 76 | courtroom deputy's initials | 03 AUG 24 PM 2:11 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETE[D]

AUG 2 5 20[ ]

| | |
|---|---|
| LYNDA WILSON, et al., and <br> HERRY RASYIDIN HARAHAP, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> SUNDSTRAND CORP., <br><br> Defendants. | Case Nos. 99 C 6944 <br> and 99 C 6946 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

These consolidated actions, which involve the crash of a Garuda Indonesia airliner in Indonesia in September 26, 1997, are set for trial in late September 2003. The case had originally been set for trial in late March 2003, but trial was deferred for six months at the request of both parties so that they could attempt to settle it. At that time, a number of pending motions were withdrawn and were therefore terminated by the Court with the understanding that they would be revived if the effort at settlement did not succeed. In late July, the parties advised the Court that they had not settled the case. Briefing on the motions has now been completed. The Court ruled on several of them in a Memorandum Opinion and Order dated August 18, 2003. In this order, the Court rules on the remaining pending motions.

A.  **Plaintiffs' motion to reconsider**

Plaintiffs' motion to reconsider concerns the Court's December 19, 2002 order, which involved subpoenas that plaintiffs had served on representatives of P.T. Garuda Indonesia

33

Airlines in the Central District of California and the District of Oregon. The order directed plaintiffs to withdraw the petitions on the grounds that they had failed to move to enforce the subpoenas within the time limit set by the Court. The motion is moot with regard to the Central District of California matter, as the petition plaintiffs filed in that District was denied on January 10, 2003. The Oregon matter is still pending, as the judge responsible for it has deferred ruling pending this Court's ruling on the motion to reconsider.

Plaintiffs have presented nothing new that warrants reconsideration of the Court's earlier ruling. It is true, as plaintiffs point out, that they served the Oregon subpoena prior to the fact discovery cutoff date. But when the matter came to the Court's attention, we set a deadline on plaintiffs' efforts to enforce the subpoena. This was done to avoid interference with the dates set for summary judgment, expert discovery, and trial, and because plaintiffs had unreasonably delayed attempting to enforce this and other related subpoenas. Plaintiffs knew what the deadline was and knew the Court was serious in setting it, yet they did not act with reasonable dispatch. Their motion to reconsider is denied.

**B.     Defendant's motion to compel depositions of Mary Trindle and Parlin Nainggolan**

Mary Trindle and Parlin Nainggolan are the representatives of certain of the victims of the crash. On December 11, 2002, the Court ordered that they be produced for deposition. We directed that Nainggolan, who lives in Indonesia, be deposed by telephone, and that Trindle, who lives in Great Britain, be deposed in person at the time of a then-scheduled expert witness deposition, or if that could not be done, then by telephone. *See* Transcript, Dec. 11, 2002 at 57-59. The Court pointed out that if plaintiffs stipulated not to call these witnesses at trial, their depositions might not be required. *See id.* at 59-60. Plaintiffs have declined to stipulate not to

call Nainggolan and Trindle, and thus they must produce them for deposition. Because neither Nainggolan nor Trindle represents any of the crash victims whose cases will be tried beginning on September 22, 2003, the parties agree that there is no need to take their depositions now. The Court agrees with Sundstrand, however, that it is appropriate to enter an order at this point compelling the depositions at a date certain. For these reasons, the Court grants Sundstrand's motion and orders plaintiffs to produce Trindle and Nainggolan for deposition in their home countries within 45 days after the completion of the upcoming trial. The parties have agreed that the depositions will be taken by video conference and have also agreed to the particular arrangements for Trindle's deposition. With regard to Nainggolan's deposition, the Court orders that it take place in Jakarta due to the presence of video conferencing facilities in that city.

**C.    Defendant's motion to clarify the record with respect to proper corporate name**

Sundstrand Corporation exists no more; following its merger with another entity, the resulting entity is known as Hamilton Sundstrand Corporation. Defendant (we will continue to refer to it as "Sundstrand" because that is what it was called at the time the device at issue in this case was manufactured) asks the Court to "clarify the record" to reflect that the name of the defendant is Hamilton Sundstrand Corporation and to modify retroactively all of the Court's prior rulings to reflect this change.

Plaintiffs appear to be quite suspicious of the proposed change, and based on the conduct of the litigation thus far the Court cannot say that it blames them. It is likely that provision was made in the merger documents for how liabilities arising from the acts of the predecessor entities would be handled; but the Court has no idea whether plaintiffs have seen those documents and does not know what they provide. Defendant has not explained to the Court why it makes a

3

difference what it is called in the caption. Conceivably it may affect insurance coverage or how a judgment is paid. But when plaintiff, in response to defendant's motion, raised these concerns, defendant made no effort to clear the matter up. Rather, it says (in substance) only that it does not like being referred to by the wrong name. But as defendant itself points out, Hamilton Sundstrand has defended the case from day one. All of this leaves the Court wondering why this is such an important issue. Unless and until defendant elects to explain itself better, its motion is granted only in part: the caption is ordered amended to identify the defendant as "Sundstrand Corporation, now known as Hamilton Sundstrand Corporation." The Court will not, however, modify any prior orders at this time.

**D.    Sundstrand's motion to bar Indonesian plaintiff heirs from testifying at trial**

At an earlier stage of this case, there was a dispute over whether the parties identified as representatives of the deceased passengers of the crashed aircraft had the capacity to file suit. At a point in time when the Court had questioned the adequacy of the evidence provided to show the Indonesian representatives' capacity to sue, plaintiffs were granted leave to file, and did file on March 26, 2002, a second amended complaint naming as plaintiffs each of the heirs of the deceased Indonesian passengers. Before the Court granted leave to file the second amended complaint, we pointed out that if plaintiffs chose this route, they would be "add[ing] six pages of deponents to the list," *see* Transcript, Mar. 26, 2002, p. 6, namely the heirs they were naming as plaintiffs.

In early June 2002, Sundstrand served plaintiffs' counsel with written discovery requests addressed to each of the fifty-nine newly named plaintiffs, as well as deposition notices for forty-one of them. Plaintiffs objected to Sundstrand's interrogatories, stating "none of the above

4

individuals are parties to this action. Interrogatories may not be directed to a non-party under Federal Rule of Civil Procedure 33." Dfdt. Motion, Ex. G at 3. Plaintiffs also advised defendants that the heirs would not appear for their noticed depositions and would have to be subpoenaed because they were non-parties. *Id.*, Ex. H. Sundstrand has now moved to bar the Indonesian heirs from testifying at trial because they did not respond to properly served discovery requests.

Plaintiffs object that the addition of the heirs as parties was intended to be and announced to be a temporary state of affairs, to ensure that the capacity to sue existed on behalf of each of the deceased passengers while steps were being taken to obtain the necessary documentation regarding the originally-named representatives. Though that may be so, the newly-named plaintiffs were nonetheless plaintiffs until they were dismissed from the case, which was not requested until January 2003. If plaintiffs did not want them to be deposed, they should have moved to dismiss them much sooner, or alternatively they should have moved for a protective order precluding the requested discovery. Having failed to take either of these steps, the heir-plaintiffs did not have the right to ignore the discovery requests they received. Because these individuals failed to respond to discovery requests, the Court grants defendant's motion, and pursuant to Fed. R. Civ. P. 37(d) & 37(b)(2)(B) bars the heirs who were named as plaintiffs from testifying at trial in this case.

E.  **Sundstrand's motion to bar testimony of Glenn Haskins as sanction**

Sundstrand has moved to bar certain testimony by Glenn Haskins, an expert retained by plaintiffs' counsel, as a sanction for allegedly improper "speaking" objections by plaintiffs' counsel at Haskins' deposition. Federal Rule of Civil Procedure 30(d)(1) plainly prohibits

5

"speaking" objections by providing that "[a]ny objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner." Just the other day, the Court sanctioned Sundstrand due in part to its attorney's repeated, prolonged, and successful effort to coach a witness, Deborah Pederslie, through improper speaking objections. *See Wilson v. Sundstrand Corp.*, Nos. 99 C 6944 & 99 C 6946, slip op. at 11-25 (N.D. Ill. Aug. 18, 2003).

Sundstrand prefaces its motion by referring to plaintiffs' previously-made motion for sanctions regarding the Pederslie deposition; it says that "[i]f the Court is inclined to consider plaintiffs' motion, the defendant respectfully requests the Court to consider the same motion presented here as to the deposition of Glenn Haskins." Dfdt. Motion at 1-2. In its reply, filed one day after the Court's previously referenced sanctions ruling, Sundstrand continues this tit-for-tat approach, suggesting that the Court could deny its motion regarding the Haskins deposition if only we would vacate the August 18 sanctions ruling:

> In compromise, Hamilton Sundstrand suggests that the Court reverse Part 4 of its ruling on August 18, 2003 in which the Court precluded Hamilton Sundstrand from opposing the admission at trial of certain Allied Signal documents and imposed certain other sanctions for what this Court determined to be improper speaking objections by counsel for Hamilton Sundstrand at the Pederslie deposition. (See pp. 24-25 of Exhibit A). To use an imperfect analogy, this would essentially wash out what in football would be called offsetting penalties. This is the only fair outcome as it is wholly unjust for Plaintiffs' counsel to complain about speaking objections in the Pederslie deposition and successfully seek the same imposition of sanctions against Hamilton Sundstrand when he is performing the same activity, in a far more blatant manner. In the alternative, if this Court decides not to reverse its ruling in Part 4 of its August 18, 2003 decision, the Court should bar Haskins from testifying at trial regarding the relevant subjects as a sanction for the improper speaking objections.

Dfdt. Reply at 4-5. To call this a display of chutzpah would be a gross understatement. The Court's rulings are not up for barter, and motions that have been filed are not an exercise in

negotiation with the Court that calls for, as Sundstrand proposes, "compromise." The Court will deal with each motion filed by the parties on its merits.

Sundstrand's proposal is also rejected for other reasons. First of all, as the Court's August 18 ruling makes clear, we imposed sanctions on Sundstrand not simply because of its counsel's conduct at the Pederslie's deposition, but first and foremost because of its improper withholding of relevant documents that it was under an obligation to produce. Second, Sundstrand complains of two very brief supposed speaking objections by counsel at the Haskins deposition (really just one, as will become clear in a moment), whereas plaintiffs complained of repeated and prolonged coaching by Sundstrand's counsel at the Pederslie deposition. Finally, Sundstrand's reference to "offsetting penalties" is misleading, as the harm caused by the conduct in the two instances is not the same. As the Court noted in the August 18 ruling, a sanction must be proportionate to the wrong; simply offsetting the two acts of misconduct because they both happen to involve speaking objections at depositions would violate that principle.

That said, the Court agrees with Sundstrand that one of the instances it cites from the Haskins deposition constituted improper coaching by plaintiffs' counsel in violation of Rule 30(d)(1). We quote from the transcript:

> Dfdt. Atty.: Now, let me ask you, in the few minutes we have remaining before we break for this part one of your deposition, the reason the GPWS system didn't give an alert at any of the places that you said it should have, is there any part in your report where it says that the reason is?
>
> Haskins: Yes.
>
> Dfdt. Atty.: Where?
>
> Haskins: I think that is the second item in there. The second item discusses that.

7

| | |
|---|---|
| Dfdt. Atty.: | Any other places besides item 2, or is that it? |
| Haskins: | Item 2. |
| Dfdt. Atty.: | I am not trying to encourage you to have more, I certainly don't want you to. I just want to be certain I extract it. |
| Pltf. Atty. 1: | I want to make sure, too. I mean, Glenn, if your whole report goes to that — |
| Dfdt. Atty.: | Objection. I think this is improper coaching of the witness. |
| Pltf. Atty. 1: | I'm sorry. I don't want to coach him either. |
| Dfdt. Atty.: | Let's just not even do this. |
| Pltf. Atty. 1: | I want to make sure the witness understands the question. |
| Dfdt. Atty.: | I don't want you to make sure anything about the witness. He can answer this question that is pending. |
| Pltf. Atty. 1: | Let me note an objection, and I will let it go. Object to the form of the question. |
| Haskins: | Item 2, item 3, item 4, I think discuss that, and, in general, you know, item 5 goes toward the systematic disregard of standard practices. |

Haskins Dep. at 181-82. In summary, Haskins identified one, and only one aspect of his report as explaining the reason why he believes the GPWS system did not give an alert. At that point, plaintiffs' attorney prompted Haskins to consider other aspects of his report. Haskins got the message and expanded on his answer. The action of plaintiffs' counsel was improper; this is exactly what Rule 30(d)(1) was designed to prevent.

The Court disagrees with Sundstrand, however, regarding the second matter it cites. Shortly after the exchange quoted above, Sundstrand's counsel proceeded to ask Haskins about the "item 4" that he had referenced. The following exchange occurred:

8

| | |
|---|---|
| Dfdt. Atty.: | Okay. Now, let me just here in the last few minutes go to this item 4. |
| | In your listing of item 2, 3, and 4 – let's take 4, for instances. Are you actually saying that that occurred at the time of this flight and that's why – one of the reasons why the GPWS did not sound an alert and you think it should have? I don't mean you to read it and analyze it now, but you answered my question once already, and I want to be sure you understood the question. |
| | I am trying to extract from your report the actual failures that play a role in this occurrence, and that's what I am trying to finalize. |
| Haskins: | Yes, and you are asking me whether or not the mode switching design error – |
| Dfdt. Atty.: | Happened at the time of the accident, correct? |
| Haskins: | – happened at the time of this accident. |
| | And so I am going to read this and give myself a little bit of time to think about your question so I can properly give you an answer. |
| Dfdt. Atty.: | Okay. |
| Haskins: | Is that all right? |
| Dfdt. Atty.: | I understand now that you understand my question. Thank you. |
| | (WHEREUPON, discussion was had off the record from 5:29 p.m. to 5:32 p.m.) |
| Haskins: | Ask me the question again. |
| | (WHEREUPON, the record was read by the reporter as requested.) |
| Haskins: | This is indicative of some of the process problems associated with the way that this system was developed. If what was stated in his memo is true, then the design associated with this box is faulty. This crash and the performance of the GPWC, certainly, as a part of the GPWS, failed to provide a warning when it should have as a result of the faulty design that was put out by Sundstrand at the time. The most likely failure mechanism, the most systemic design problem, is item 2. Item 4 may well have contributed. |

9

| | | |
|---|---|---|
| Pltf. Atty. 2: | Is there more or is that your answer? Are you done? |
| Dfdt. Atty.: | I wouldn't encourage any more. |
| Pltf. Atty. 2: | I can't tell because he's thinking and – I didn't want him to step on your answer if you weren't done. |
| Haskins: | I am done. |
| Pltf. Atty. 2: | It is just hard to tell. |

Haskins Dep., pp. 184-85. Sundstrand's complaint concerns the question by plaintiffs' attorney, "Is there more or is that your answer? Are you done?" That was not an improper speaking objection. Plaintiffs contend without contradiction (and both Haskins' preceding comments and the ensuing comments by plaintiffs' counsel circumstantially confirm) that Haskins is a soft-spoken individual who takes a good deal of time responding to a question, and that plaintiffs' attorney was simply trying to find out if he had finished his answer. In any event, even if this was an attempt to get Haskins to supplement his answer, Sundstrand was in no way harmed, as Haskins said he had completed his answer and did not supplement it.

There remains for the Court to determine what sanction we should impose for the single improper speaking objection made by plaintiffs' counsel. As indicated above and in our August 18 ruling, a sanction for a discovery violation must be proportionate to the wrong. Sundstrand asks the Court to completely bar Haskins from testifying on "the areas in which he was improperly coached." Sundstrand does not explain exactly what it means by this; on the face of it, Sundstrand seems to be asking the Court to entirely bar Haskins from testifying about the reasons why the GPWS system failed to give a proper alert. Such a sweeping sanction would be grossly overbroad and wildly disproportionate to the single violation of Rule 30(d)(1) committed

10

by counsel and the limited harm actually caused to Sundstrand. What Sundstrand lost as a result of the coaching by plaintiffs' counsel was an answer – that the GPWS system failed only because of Haskins' "item 2" – that it could use to impeach Haskins if he gave a broader or different explanation at trial. The appropriate sanction in this situation returns the parties to the position they would have been in absent the acts of plaintiffs' counsel. The Court therefore strikes lines 16 through 19 on page 182 of Haskins' deposition, i.e., the supplemental answer he gave after the improper objection. If at trial Haskins testifies that there was more to it than item 2, Sundstrand will be permitted to impeach him by eliciting the questions and answers given at lines 8 through 20 on page 191 of the deposition, and the Court will preclude plaintiffs and Haskins from pointing out that he thereafter expanded on that answer. Plaintiffs are ordered to pay defendant a sanction of $750, which the Court finds is the reasonable expense involved in bringing this violation to the attention of the Court.[1]

**F.    Sundstrand's motion to strike supplemental report of Haskins and bar testimony**

Haskins' report pursuant to Fed. R. Civ. P. 26(a)(2) was timely submitted on November 26, 2002. Sundstrand did not make, and does not now make, any objection to the sufficiency of that report. Haskins' deposition was scheduled for December 20, 2002. On December 16, 2002, plaintiffs' counsel advised Sundstrand's counsel that plaintiffs intended to supplement the reports of Haskins and another expert as soon as they received certain records; counsel suggested that Sundstrand defer taking Haskins' deposition until after the supplementation. Sundstrand's

---

[1] It is worth pointing out that when an attorney "defending" a deposition feels that the witness gave an incomplete answer, the attorney is not without a remedy: when the "defending" attorney's turn to asks questions arrives, he can ask the witness to clarify or expand on the earlier answer. If plaintiffs' counsel had simply done that, there would have been no occasion for the imposition of sanctions.

11

counsel agreed to do so. In the ensuing days, plaintiffs did not provide a supplemental report from Haskins. Sundstrand therefore rescheduled the deposition, which proceeded on January 11, 2003. This was two months before the then-scheduled trial date of March 10. As of January 11, defendants' rebuttal expert reports were not yet due.

Haskins' deposition began on January 11 as scheduled, but it was not completed on that date, and the parties agreed to finish the deposition on January 17. On January 16, plaintiffs produced a revised report by Haskins. Sundstrand has provided the Court with a copy of the report highlighted to show two differences with Haskins' original report.[2] *See* Dfdt. Motion, Ex. D. The first change was as follows, with the added material italicized:

| Original report | Revised report |
|---|---|
| If aural and visual warnings were provided [by the GPWS] as they should have been before impact, the kinematics of the jet would have allowed the pilots enough time to avoid impact. | If aural and visual warnings were provided [by the GPWS], as they should have been before impact *(Mode 2, approximately 36, 26, 18 and 14 seconds before impact +/- 2 sec)*, the kinematics of the jet would have allowed the pilots enough time to avoid impact. |

In short, Haskins supplemented his report to provide the specific intervals at which he contends the GPWS system should have provided warnings. This information was not in his original report. It had been addressed, however, during his first session of his deposition five days prior to the revised report. Specifically, under questioning by Sundstrand's counsel, Haskins had

---

[2] Sundstrand says that there were more than two changes, but it has not argued that it was prejudiced by any of the others. It is not the Court's job to compare Haskins' two reports, determine what differences exist, and try to divine their significance. Thus our consideration of Sundstrand's motion is confined to the two matters that it discusses in its motion and reply memorandum.

12

testified that the "Mode 2" warnings should have been "somewhere between 20 and 40 seconds" prior to impact. Haskins Dep. at 99. Sundstrand argues that Haskins' report was improperly supplemented "to react to defendant's deposition questions." Dfdt. Motion at 3.

Sundstrand first argues that a party may not supplement an expert report without first obtaining leave of court. The Court disagrees; the rule does not say this. In fact, Federal Rule of Civil Procedure 26(e)(1) imposes an *obligation* to supplement an expert disclosure "if the party learns that in some material respect the information disclosed is incomplete or incorrect." The Rule does not suggest that leave of court is required. Though there are no doubt some limitations on a party's ability to supplement prior disclosures, the Court sees no reason to impose upon the supplementing party the responsibility to seek leave of court, particularly when the drafters of the Rules chose not to do so. Most supplemental discovery answers go unchallenged, and thus there is no reason to impose upon district judges and magistrate judges supervising discovery the need to consider burdensome motions whenever a discovery response is supplemented. Rather, the onus is appropriately placed on the party that objects to a supplement to bring it to the court's attention in timely fashion.

Sundstrand argues that a party may supplement expert disclosures only if the information is newly obtained or the prior report was incorrect or incomplete. Dfdt. Motion, p. 7 (citing *Collier v. Bradley University*, 113 F. Supp. 2d 1235, 1242 (C.D. Ill. 2000)). That seems to be exactly what occurred here. During the initial session of his deposition, when asked whether he had any materials that would allow him to determine the exact intervals at which warnings should have been given, Haskins said:

> Yes, I do. The initial calculations that I did were based on more rough data than has

13

> currently become available. And there's more specific data available now, and so before I tie myself down to a very specific time, I want to go through that data that came from Barnett. Do you understand?

Haskins Dep. at 100-01.[3] This testimony, which Sundstrand does not attempt to refute in its motion, is sufficient to establish that the supplementation of Haskins' report with regard to the warning intervals was warranted because it was based on information he had received after his November 26, 2002 report and was not unreasonably delayed thereafter (Sundstrand says that the Barnett documents did not become available until, at the earliest, December 7, 2002).[4]

Even if Haskins' supplementation regarding the warning intervals was done as a direct or indirect result of the fact that defense counsel had pursued that matter at the deposition, that would not necessarily make it improper. This is not a case, unlike *Salgado v. General Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1988), cited by Sundstrand, where the expert's original report was deficient and the party attempted to cure the deficiency after discovery had closed. In this case, as noted earlier, no challenge was made (or is made now) to Haskins' original report. Moreover, Sundstrand had not yet completed Haskins' deposition at the time of the supplementation and thus had an additional opportunity to question him about the new information; and Sundstrand's own rebuttal expert reports had not yet been served and were not yet due. This case is therefore nothing like *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 2000 WL 748155 (N.D. Ill. June 5, 2000), cited by Sundstrand. In that

---

[3] There ensued a colloquy between counsel at which Sundstrand's counsel said he had a problem with continuing the deposition if Barnett intended to provide additional information. Eventually, however, counsel continued the deposition with the understanding that it would be resumed later.

[4] It is doubtful that Haskins actually had the Barnett documents until late December. *See* Dfdt. Motion, Ex. C.

14

case, the court struck expert disclosures that were submitted four years after the close of expert discovery that included entirely new opinions, based on information that had been available to them before expert discovery was closed. We also note that in *Brand Name,* the court indicated that it *had* authorized the supplementation of existing reports. *Id.* at *3.

For all of these reasons, the Court declines to strike the information in Barnett's revised report regarding the warning interval, or Barnett's testimony on that topic.

The second aspect cited by Sundstrand in which Haskins' report was changed was to add a paragraph in which he responded to the deposition of defense expert Wallace Ward. Though Ward was deposed on November 15, 2002, Sundstrand provides the Court with no information indicating that the transcript of his deposition (to which Haskins cites in his revised report) was available to Haskins before his initial report was prepared and served. Again, the supplementation was proper under the general rule as Sundstrand presents it: the information was newly obtained by the expert following the presentation of his report and was not unreasonably delayed. And Sundstrand had a fair opportunity to deal with this in its own expert disclosures, which were not yet due at the time of Haskins' supplementation.

To ensure that Sundstrand has a reasonable opportunity to address these points on their merits at trial, it may submit revised expert disclosures on the two topics discussed herein on or before August 31, 2003. Barnett must be presented for deposition for an additional hour on or before that same date, in person if he is reasonably available or by telephone if he is not reasonably available. Any defense expert supplementing his or her report is to be presented for deposition on the same terms by September 7, 2003.

In its reply on this motion, Sundstrand seeks to preclude plaintiffs from relying on other

allegedly late-disclosed materials. This is a separate matter which, if Sundstrand wishes to raise it, should be included in a motion *in limine* subject to the overall page limitations previously set.

### Conclusion

For the reasons stated above, plaintiffs' motion to reconsider [item #253] is denied. Defendant's motion to compel depositions of Mary Trindle and Parlin Nainggolan is granted on the terms and conditions described above. Defendant's motion to clarify the record with respect to proper corporate name [#242] is granted in part; the caption of the case is ordered amended to identify the defendant as "Sundstrand Corporation, now known as Hamilton Sundstrand Corporation." Defendant's motion to bar Indonesian plaintiff heirs from testifying at trial [# 203] is granted. Defendant's motion to bar testimony of Glenn Haskins as sanction [# 248] is granted in part as described above. Defendant's motion to strike supplemental report of Haskins and bar testimony [#267] is denied. Defendant's emergency motion to strike all questions and answers in the Barnett deposition initiated after the court time limitation [# 252] was resolved by agreement and is therefore terminated. The ruling date of August 21, 2003 is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 20, 2003